Julio Garcia **RIVERA**, Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE**, Respondent.

No. 85–4100.

United States Court of Appeals, Fifth Circuit.

June 13, 1986.

Michael J. Jacobsen, Centro Para Inmigrantes, Houston, Tex., for petitioner.

David H. Lambert, Dist. Dir. INS, New Orleans, La., Paul B. O'Neill, Dist. Dir., INS, Gary T. Goldman, Houston, Tex., for other interested parties.

Morris Deutsch, Atty., William French Smith, Atty. Gen., Dept. of Justice, Robert L. Bombough, Director, Office of Imm. Lit., Civil Div., Joan E. Smiley, Charles E. Hamilton, III, Richard M. Evans, Atty., Washington, D.C., for respondent.

Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Julio Garcia Rivera seeks review of the Board of Immigration Appeals' (BIA) decision denying his motion to reopen deportation proceedings. Garcia contends that he was eligible for discretionary relief from deportation under section 212(c) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(c). We grant the petition for review and remand to the BIA.

Garcia, a fifty-two year old native and citizen of El Salvador, was admitted to the United States as a lawful permanent resident on November 17, 1976. On June 26, 1979, the Immigration & Naturalization Service (INS) issued an order to show cause charging Garcia with deportability under section 241(a)(13), 8 U.S.C. § 1251(a)(13). Specifically, the INS alleged that Garcia had assisted four El Salvadoran aliens to enter the United States in exchange for $800 from each alien.[1] Garcia subsequently pled guilty to a count of inducing an alien to enter the United States, section 274(a)(4), 8 U.S.C. § 1324(a)(4). The immigration judge found Garcia deportable on November 30, 1981. Garcia's appeal to the BIA was dismissed on May 11, 1984.[2] Garcia's appeal of the BIA's decision was dismissed by this Court in January, 1985. In the meantime, on August 31, 1984, Garcia had filed a motion with the BIA to reopen his deportation proceedings so he could apply for discretionary relief from deportation under section 212(c) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(c). The BIA denied Garcia's motion to reopen on November 27, 1984 on the ground that Garcia was statutorily ineligible for section 212(c) relief since his lawful permanent resident status had been terminated administratively before he applied. Before us is Garcia's appeal of the BIA's decision refusing to reopen the case.

## DISCUSSION

Garcia relies upon section 212(c), 8 U.S.C. § 1182(c) of the Immigration and Nationality Act of 1952. Section 212(c) provides:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an or-

---

1. Section 241(a)(13) provides:

 (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

 * * * * * *

 (13) prior to, or at the time of any entry, or at any time within five years after any entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law.

2. The BIA found that Garcia's conviction under section 274(a)(4) established all of the elements of deportability under section 241(a)(13) except the "for gain" issue. The testimony of Garcia and one of the aliens, Zuniga, established that Garcia was paid for his role, thus satisfying the remaining element.

der of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)–(25), (30), and (31) of subsection (a) of this section. Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title.

Although section 212(c) on its face only applies to excludable lawful permanent resident aliens who are trying to reenter the United States, the well-established policy of the INS is to allow deportable permanent resident aliens also to seek a waiver under section 212(c). *In re Silva*, 16 I & N Dec. 26 (BIA 1976).[3] The practice of allowing aliens to seek such discretionary relief from deportation is a long-standing one which existed under section 212(c)'s predecessor, known as the Seventh Proviso.[4]

■ To be eligible for discretionary relief under section 212(c), the alien must (1) be "lawfully admitted for permanent residence" and (2) have "a lawful unrelinquished domicile of seven consecutive years." This case before us focuses exclusively on the issue of lawful permanent resident status. The BIA found that Garcia "accrued the requisite 7-year period on November 17, 1983," and denied Garcia's eligibility exclusively on the ground that

Garcia was not a lawful permanent resident on August 31, 1984 when he applied for § 212(c) relief.[5] In reaching this decision, the BIA relied on *Matter of Lok*, 18 I & N Dec. 101 (BIA 1981), which stated that lawful permanent residence status ends with the entry of a final administrative order of deportation. In Garcia's case this occurred when the BIA affirmed the order of deportation on May 11, 1984. Thus, under the BIA's ruling, Garcia satisfied the seven-year domicile requirement on November 17, 1983, but he failed to meet section 212(c)'s lawful permanent resident requirement since his status terminated on May 11, 1984, before he applied for relief on August 31, 1984. Garcia argues that his status did not terminate until this Court affirmed his deportation order, January 29, 1985.

Congress defined the phrase "lawfully admitted for permanent residence" to mean "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with immigration laws, *such status not having changed.*" § 101(a)(20), 8 U.S.C. § 1101(a)(20) (emphasis added). The INS argues that the status of a lawful permanent resident alien changes within the meaning of section 101(a)(20) when the alien is adjudged deportable. Previously, the BIA had decided that the permanent resident alien lost his status on the date the immigration judge ruled the alien deporta-

---

3. Previously, the INS allowed deportable aliens section 212(c) relief only when the alien had been abroad or when the alien sought adjustment of his status under section 8 U.S.C. § 1255. The Second Circuit held this interpretation of section 212(c) violated the equal protection clause of the Constitution. *Francis v. Immigration & Naturalization Serv.*, 532 F.2d 268, 272–73 (2nd Cir.1976). The INS decided to adopt *Francis* nationwide, so now all eligible lawful permanent resident aliens who are ordered deported may ask the Attorney General to waive the enumerated grounds for deportability. *In re Silva*, 16 I & N Dec. 26 (BIA 1976). As noted in *Byus-Narvaez v. Immigration & Naturalization Serv.*, 601 F.2d 879, 881 n. 5 (5th Cir.1979), and *Sierra-Reyes v. Immigration & Naturalization Serv.*, 585 F.2d 762, 763 (5th Cir.1978), we have never ruled on the validity of the *Francis* holding.

4. The Seventh Proviso stated: "[A]liens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Attorney General, and under such conditions as he may prescribe." Act of February 5, 1917, Ch. 29, § 3, 39 Stat. 878 (repealed 1952).

5. A number of cases have wrestled with the seven-year lawful domicile requirement. *Avila-Murrieta v. Immigration and Naturalization Serv.*, 762 F.2d 733 (9th Cir.1985); *Dabone v. Karn*, 763 F.2d 593, 598 (3d Cir.1985); *Marti-Xiques v. Immigration and Naturalization Serv.*, 741 F.2d 350 (11th Cir.1984); *Wall v. Immigration and Naturalization Serv.*, 722 F.2d 1442 (9th Cir.1984); *Lok v. Immigration and Naturalization Serv.*, 681 F.2d 107 (2nd Cir.1982). But neither party to the present appeal raises the seven-year requirement in this case.

ble. *Matter of Lok,* 18 I & N Dec. at 104. The BIA rethought its position and decided that this date was premature since the alien was entitled to his case being heard by another fact finder—the BIA. 18 I & N Dec. at 106. The BIA has "plenary power to review the record *de novo,* and to make its own independent determinations on questions of law and fact." *Id.*

The INS urges us to grant deference to its interpretation of section 212(c). The interpretation the INS urges, however, essentially makes the discretionary relief provided by section 212(c) unavailable in the deportation context, and thus vitiates the statute as interpreted by the INS. The position of the INS creates a "Catch-22": the alien applies for section 212(c) relief because he or she has been found deportable, but because the alien is deportable and therefore is no longer a lawful permanent resident, he cannot apply for the relief. While the BIA acknowledges the absurdity of asking a permanent resident alien to apply for 212(c) relief when he commits the deportable act, *Matter of Lok,* 18 I & N Dec. at 106, it fails to recognize the incongruousness of asking a lawful permanent resident alien to apply for relief from deportation even before he or she has been administratively adjudged deportable.

Indeed, the BIA early rejected the very interpretation the INS urges upon us now. In 1953, a year after the passage of section 212, the BIA held that under the interpretation the INS now espouses "the relief announced in section 212(c) may not be exercised in *any* deportation proceeding." *In Matter of S–,* 6 I & N Dec. 392, 394 (BIA 1954) (AG 1955) (emphasis in original). The facts are very similar to this case. The basis for the alien's deportability were four criminal convictions for petit larceny. The alien clearly satisfied the seven-year lawful domicile requirement, but, as here, the INS argued that the alien was not eligible since he was no longer a lawful permanent resident. The INS urged the identical argument that "once an alien is rendered deportable, his status is changed from an alien lawfully admitted for perma-nent residence to an alien illegally in the United States." 6 I & N Dec. at 394.

The BIA searched the legislative history of the Act to determine if Congress had intended that section 212(c) relief not be used in deportation proceedings. The BIA noted that Congress was well aware that § 212(c)'s predecessor, the Seventh Proviso, although literally limited to exclusion proceedings, was also used to avoid depor-tation. *See, e.g.,* S.Rep. No. 1515, 81st Cong., 2d Sess. 382, 592 (1950) (noting that an alien's status as deportable may be changed by the grant of Seventh Proviso relief). Congress carefully listed problems with the Seventh Proviso. It found that aliens who had entered fraudulently or without inspection were being granted re-lief under the Seventh Proviso. So also were aliens who had previously been physi-cally deported. Congress wanted to limit the availability of the discretionary relief to those aliens "who came in the front door, were inspected, lawfully admitted ... and remained here for seven years before they got into trouble." *Id.* at 382. The BIA made clear that the use of the Seventh Proviso in deportation proceedings was not a concern:

> In view of the detailed study given to the 7th Proviso problem, the specificity with which the practices disapproved were enumerated, the notice taken of the use of this relief in deportation proceedings, and the item by item listing of recom-mendations as to change, it is unthink-able that there would be no expression of disapproval and no recommendation as to change, if the use of 7th Proviso type of relief were to be barred under the new act in all deportation proceedings. Yet there is nothing to indicate that Congress wished to cut off this unique relief in deportation proceedings. It is our con-clusion, therefore, that the legislative history of the act does not require the interpretation urged by the Service. On the contrary, in our opinion, it repudiates the suggested construction.

6 I & N at 396.

In *Matter of S–* the Board then turned to the key phrase "such status not having

changed" and stated that this language referred to aliens who have changed their status from immigrants to nonimmigrants pursuant section 247, 8 U.S.C. § 1257.

> "[I]t is logical to assume that Congress, having expressed a serious disapproval of the practice whereby 7th Proviso relief was accorded to aliens who had been admitted to the United States in a nonimmigrant status, wished to make it clear that not only was this type of relief not to be granted to aliens unless lawfully admitted as immigrants, but to emphasize that it was also not to be granted to aliens who thereafter changed their status from that of immigrants to nonimmigrants."

*Id.* The Supreme Court approved this interpretation of the Act in a later case, *Saxbe v. Bustos,* 419 U.S. 65, 72, 955 S.Ct. 272, 277, 42 L.Ed.2d 231 (1974).

*Matter of S–* was faithfully followed for years by the BIA. Relying on *Matter of S–,* the BIA held that lawful permanent resident aliens who had been found deportable were not eligible for an adjustment of status under section 249, 8 U.S.C. § 1258. *Matter of M–P–,* 9 I & N Dec. 747 (BIA 1962); *Matter of Preciado-Castillo,* 10 I & N Dec. 3 (BIA 1962). Section 249 provides that the Attorney General, in his discretion, may create a "record of lawful admission for permanent residence" for aliens who entered the United States prior to June 28, 1940, "if no such record is otherwise available." The aliens argued that the order of deportation vitiated the record of lawful admission for permanent residence, changing their status to unlawful resident status. The BIA flatly rejected this contention as inconsistent with *Matter of S–,* reiterating that the status of a lawful permanent resident does not change when he or she becomes deportable. "Such an interpretation would render ineffective any waivers of inadmissibility now provided by the immigration laws. Accordingly, a record of respondent's admission for lawful permanent residence is available within the meaning of section 249." 9 I & N Dec. at 749; 10 I & N Dec. at 6.

Similarly, in *Matter of Mosqueda,* 14 I & N Dec. 55 (1972), it was recognized that a lawful permanent resident alien who had been found deportable could not be denied an application for a reentry permit under section 223, 8 U.S.C. § 1203 on the ground that he was no longer a permanent resident alien. Relying on *Matter of S–, Mosqueda* stated the alien's status did not change within the meaning of section 101(a)(20) because he became deportable. 14 I & N Dec. at 57.

The case the INS relies upon, *Matter of Lok,* thus represents an abrupt change of position. The decision did recognize that it conflicted with previous decisions, but gave no explanation for the turnabout. The Board did not consider the fact that its holding effectively eliminated section 212(c) relief in the deportation context. Perhaps the fact that *Lok* turned on the seven-year lawful domicile requirement, instead of the lawful permanent resident requirement, obscured the ramifications of the holding.

 We cannot grant deference to the abrupt change in administrative interpretation of the statute when it vitiates the statutory meaning, established and relied upon for many years. Statutory amendment is for the Congress. Garcia asked for section 212(c) discretionary relief in the form of a motion to reopen three months after the final administrative decision. We find that his request was timely. We hold that Garcia is entitled to claim his lawful permanent resident status for the purpose of filing his motion to reopen for consideration of section 212(c) relief although a final administrative order of deportation has been entered. To hold otherwise would preclude all permanent resident aliens who are unwilling to concede deportability in advance of administrative adjudication from applying for section 212(c) relief.

 Garcia may or may not be entitled to 212(c) relief. Our decision does not mandate the reopening of Garcia's case. We hold only that he has made timely application for section 212(c) relief as against the claim he was not a permanent lawful resident at the time of his application. To

reopen his case, Garcia must not only show that he is statutorily eligible for section 212(c) relief, but he also must show that there is a reasonable likelihood that the requested relief would be granted. *Marcello v. Immigration & Naturalization Serv.*, 694 F.2d 1033, 1035 (5th Cir.1983). We remand for the Board to consider Garcia's motion to reopen his case for consideration of section 212(c) relief without reliance upon a lack of eligibility for relief based upon failure to make timely application.

REMANDED.