**Julio Garcia RIVERA,**
**Petitioner-Appellant,**

v.

**IMMIGRATION AND NATURALIZA-**
**TION SERVICE,**
**Respondents-Appellees.**

**No. 85–4100.**

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1987.

Jerre S. Williams, Circuit Judge, dissented and filed opinion.

Michael J. Jacobsen, Centro Para Inmigrantes, Houston, Tex., Cheryl Schechter, Houston, Tex., for petitioner-appellant.

David H. Lambert, Dist. Director INS, New Orleans, La., Paul B. O'Neill, Dist. Director INS, Gary T. Goldman, Houston, Tex., for other interested parties.

Robert L. Bombough, Director, Office of Immigration Litigation, Civ. Div., Richard M. Evans, Washington, D.C., for respondents-appellees.

Before CLARK, Chief Judge,
WILLIAMS and DAVIS, Circuit Judges.

ON PETITION FOR REHEARING

W. EUGENE DAVIS, Circuit Judge:

Upon reconsideration and for reasons that follow, we are persuaded that the Board's interpretation of the Immigration and Naturalization Act is not unreasonable; given the "great deference" we must accord the Board of Immigration Appeals' (BIA) interpretation of that Act, we accept its interpretation and affirm its order. See *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

In our original opinion, we defined the narrow issue presented for decision in this case: Whether Garcia was a lawful permanent resident of this country in August 1984, when he sought section 212(c) relief. *Rivera v. INS,* 791 F.2d 1202, 1204 (5th Cir.1986). The answer to this question depends upon when, following the immigration judge's order that Rivera be deported, Rivera's status changed so that he was no longer a lawful resident of the United States.

The BIA in this case relied upon *In Re Lok,* where it considered four possible steps in the deportation process when lawful residence might terminate: (1) when the

immigration judge ordered Rivera's deportation; (2) when the deportation order was affirmed by the BIA or otherwise became administratively final; (3) when the BIA is affirmed by the court of appeals or when the time for appeal of the BIA order expires; or (4) upon execution of the deportation order. *In Re Lok*, 18 I. & N. Dec. 101, 105 (BIA 1981).

The Board carefully considered all of these possible answers. Because of the statutory obligation of the BIA to make a *de novo* review of the immigration judge's findings of fact and conclusions of law, it concluded that the alien's lawful status should not terminate upon the initial deportation order. *Id.* at 106. The BIA found it incongruous, however, that an alien under an administratively final deportation order could continue to maintain lawful resident status. *Id.* The Board concluded that the alien should not be considered a lawful resident of the United States while he appealed the adverse administrative determination to the court of appeals. The Board reasoned that:

> Authority to adjudicate an alien's deportability is vested primarily in the Attorney General and his delegates, the immigration judge and the Board.... In contrast to the Board's *de novo* review powers, the appellate court's scope of review is limited. Assuming no error of law or unfairness in procedure, the court must affirm the administrative order of deportation if the order is supported by reasonable, substantial, and probative evidence of record.
>
> To hold that an alien under a final administrative order of deportation remains a lawful permanent resident throughout the judicial proceedings would encourage spurious appeals to the courts, made solely for the purpose of accumulating more time toward eligibility for section 212(c) relief. The termination of lawful permanent resident status upon the entry of a final administrative order of deportation, on the other hand, would result in no ultimate prejudice to the alien. In those relatively rare instances where the court determines

that the Board erred, as a matter of fact or law, with respect to its deportability finding, reversal of the Board's order nullifies the order and restores the alien's lawful permanent resident status.

*Id.* at 107 (citations omitted).

The *Lok* opinion, which the Board followed in the instant case, reflects careful consideration of the solution to the problem of when lawful residence in this country should terminate. We find nothing unreasonable about the BIA's rationale or its conclusion.

Moreover, we see nothing unfair about terminating lawful resident status after an adverse decision by the initial factfinder and an affirmance by the BIA following *de novo* review. Acceptance of appellant's position that he should retain lawful resident status through the judicial appeal would create more work for an already beleaguered Board. Requiring the alien to assert his claim for discretionary relief from deportation while his deportation order is on appeal to the Board permits the Board to consider both claims together; this in turn prevents the alien from stringing out his claims and delaying the ultimate disposition of his case.

Upon reconsideration we are persuaded that terminating lawful status when the deportation order becomes administratively final will not prejudice the alien. Contrary to the assertion in our initial opinion, the applicable regulations do *not* require an alien to admit deportability as a condition to applying for section 212(c) relief: "An application ... shall be made only during the [deportation] hearing and shall not be held to constitute a concession of alienage or deportability in any case in which the [alien] does not admit his alienage or deportability." 8 C.F.R. § 242.17(e) (1986).

Also, we are now convinced that no "Catch–22" is created for the alien by the rule adopted in *Lok* and in this case. The regulations allow the alien to apply for section 212(c) relief and fully reserve all of his arguments that he is not deportable. Litigants in both criminal and civil proceed-

ings in this country are frequently required to join alternative claims and defenses in a single proceeding and lay jurors routinely decide such claims. No reason is suggested why an immigration judge or the BIA cannot fairly consider an alien's alternate claim for section 212(c) relief.

In sum, the conclusion of the BIA as to when the alien's lawful resident status terminates is a sensible one. It gives the alien ample time to assert his claim for section 212(c) relief and prevents him from litigating his various claims in a piecemeal fashion. The rule the appellant would have us adopt encourages an alien to wait until after he appeals the deportation order to the court of appeals before filing his petition for section 212(c) relief. This would require the immigration judge and the BIA to again review the alien's case to rule on the claim for section 212(c) relief. Such a rule would allow the alien to string out his claims, unnecessarily increase the Board's work load and delay the ultimate disposition of the case.

Upon reconsideration, we conclude that the BIA's interpretation of the Act is reasonable and affirm its order. To the extent our previous opinion is in conflict with the above, it is vacated.

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

The reversal of the decision in this case, 791 F.2d 1202 (5th Cir.1986), upon rehearing constitutes a remarkably passive acceptance of the oppressive whim of a governmental bureau, the Immigration and Naturalization Service. The decision now rendered by the majority of the panel is to me inescapably wrong, and the reasons are quite clear. The decision:

1. Flies directly in the face of the well reasoned authority of the only circuit which has made controlling holdings.

2. Permits the INS to rely wholly upon one of its own decisions which is demonstrably not the law.

3. Upholds an administrative decision that defies the established jurisprudential principles of the rights to rehearing and appeals of administrative decisions.

4. Forces a lawful resident alien to plead for mercy as deportable before he is deportable.

Each of these conclusions will be discussed in turn. First, appellant Rivera was administratively adjudicated on May 11, 1984, as subject to deportation order after review by the Board of Immigration Appeals of the INS. His appeal on the merits to this Court was dismissed in January 1985. In the meantime, however, Rivera had applied for discretionary relief from deportation under § 212(c) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(c). That statutory provision requires for eligibility lawful and permanent resident status and also lawful unrelinquished domicile of seven consecutive years. Rivera had met the seven year requirement.

The Ninth Circuit in *Wall v. INS*, 722 F.2d 1442 (9th Cir.1984), held that the time to satisfy the seven year requirement of lawful unrelinquished domicile could continue to accumulate after a final decision of the BIA directing deportation. While the seven year lawful domicile is conceded in this case, the *Wall* case is directly on point because it is obvious that the statute does not contemplate that an alien can maintain *lawful* domicile for purposes of continuing to accumulate the seven year residence requirement while the deportation case is being appealed from the BIA, but at the same time would not be a *lawful* resident appealing an order of deportation once the seven years is achieved.[1]

1. In *Marti-Xiques v. INS*, 713 F.2d 1511 (11th Cir.1983), the panel's holding was the same as that in *Wall*. The Court took the case en banc and reversed, holding that an alien lost standing as lawful at the time the INS issues the show cause order, even before any hearing or appeal within the agency, 741 F.2d 350 (11th Cir.1984). This was too much even for the INS which ignores the decision in its own regulations and administrative decisions. No other court has so held.

Second, the Court defers to a reliance by the INS upon its decision in *Matter of Lok*, 18 I & N, Dec. 101 (BIA 1981). It is quite true that the *Lok* decision holds that the deportability order of the BIA bars the discretionary remedy based upon § 212(c) even though the issue of deportability is still pending on appeal in the courts. The trouble with reliance upon the *Lok* case is it is not the law. The case was appealed to the Court of Appeals. While it was affirmed, 681 F.2d 107 (2d Cir.1982), it was affirmed on the very narrow ground that Lok had become deportable after the decision of the BIA because he did not enter a timely appeal of that adjudication of deportability to the Court. Thus, the decision in the *Lok* case as it stands in the law is completely compatible with the position urged in this dissent since Rivera had appealed the BIA decision. Lok had waived further challenge to deportability, and the Court of Appeals relied upon that fact in affirming the decision of the BIA.[2] Rivera had not waived further challenge.

Third, the holding of the INS countenanced by the majority opinion is jurisprudentially flawed in two serious respects. In the first place there is a right to request a rehearing before the BIA, a right which under the regulations had not been terminated in this case. Yet, the BIA denied a rehearing on the ground that Rivera no longer had the status to ask for it because he had been adjudicated deportable and was no longer a lawful resident. This is precisely as if a court on petition for rehearing denied it not on the merits but on the ground that the petitioner no longer had the right to petition for a rehearing jurisdictionally because he had lost the original decision in the court. Lawbooks will be searched in vain for any justification for this remarkable conclusion.

Further, the INS magnanimously states that if it is reversed on appeal by the Court then its prior decision which it is relying upon as final would no longer be final. The statute gives the alien the right to appeal the decision of the BIA to the Court of Appeals. It is quite true that it is not a full de novo review. But it is also quite true, as we well know, that administrative decisions are with some regularity reversed on appeal to the courts. It is at least of doubtful validity to treat a change of status as fait accompli while the alien is pursuing his statutory right to appeal that change of status to the first judicial body to consider it.

Finally, we are told that Rivera and the similarly situated alien is not prejudiced because the INS encourages the filing of discretionary relief under 212(c) before the agency makes its decision as to deportability. The claim is that this is not a trap for the unwary. The simple answer is that at least it was in this case. Rivera was barred from asking for discretionary relief although the record indicates he has at least a reasonably good case for the claim. He was barred because he did not claim discretionary relief as a deportable alien before he was adjudicated a deportable alien by the INS. He was trapped in part, at least, because he already had his lawful seven year domiciliary status, and most litigants in these cases do not yet have the seven year domicile when the BIA declares them deportable.

To the claim that finality is necessarily given to the BIA decision because of the delays occasioned by appeals, we should point out that no great national peril is demonstrable from the fact that this Court disposed of Rivera's appeal in just about seven months after the BIA decision, as to

*Dabone v. Karn,* 763 F.2d 593, 595 (3rd Cir. 1985), adopts the cut off date as the date of the final BIA decision, the position taken by the panel majority. But that is an exclusion case, not a deportation case. "The new entry stands the alien on the same footing as if it were the initial entry."

**2.** In *Avila-Murrieta v. INS,* 762 F.2d 733 (9th Cir.1985), the Ninth Circuit agreed with the Sec-

ond Circuit's decision in *Lok* that if the alien conceded deportability after the BIA decision he no longer could ask for discretionary relief. In so holding the Court properly distinguished its *Wall* holding that lawful residence continues after the BIA decision if that decision is being appealed.

an alien who had been a lawful resident and domiciliary for over seven years. It is also well to stress again that appeal is a matter of right and that this Court possesses sanctions and summary procedures to deal with frivolous appeals.

How the dignity and majesty of the law is vindicated by mistreating this alien who had been a lawful permanent resident is beyond my comprehension. He was certainly entitled to be *considered* for discretionary relief and that was all he asked. Perhaps it gives the petty tyrant a warm glow to cut off the alien's right simply to ask for discretionary relief provided by the Congress while he is appealing a decision that he is deportable. It gives me the cold shivers. There are no words in any statute anywhere that call for this result, and the panel opinion cites none. It is a source of keen regret to me that we do not insist that the INS respect Congress' obvious wishes that aliens who are lawfully in the United States be treated with respect, and, having met the statutory lawful residence and domicile requirement, be entitled to ask for discretionary relief at any time before they are finally adjudicated otherwise. I dissent.