September 28, 1993

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-1122
No. 92-2272

JOSE MANUEL GONCALVES,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

ON PETITIONS FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Breyer, Chief Judge,

Selya and Stahl, Circuit Judges.

David Yavner for petitioner.

Donald Keener, Acting Assistant Director, with whom Stuart M.

Gerson, Assistant Attorney General, Civil Division, Anne C. Arries,

Attorney, Office of Immigration Litigation, Civil Division, Department
of Justice, and David M. McConnell, Attorney, Office of Immigration

Litigation, Civil Division, Department of Justice, were on brief for
respondent.

BREYER, Chief Judge. The Board of Immigration

Appeals has a general procedural rule that says it "may . .

. reopen or reconsider any case in which it has rendered a

decision." 8 C.F.R. 3.2 (1993). In a series of cases,

however, the Board has developed an exception to this

procedural rule. The exception relates to a certain kind of

Board decision: whether or not to grant "discretionary

relief" which would permit an alien, otherwise "deportable,"

nonetheless to remain in the United States. Immigration and

Nationality Act (INA) 212(c), 8 U.S.C. 1182(c).

According to the procedural exception, once the Board has

denied the alien's initial "discretionary relief"

application (and thus the Board has finally found the alien

"deportable"), the alien may not ask the Board to reopen his

deportation proceedings for further consideration of his

application. See, e.g., Matter of Cerna, Int. Dec. 3161,

slip op. at 3-4 (BIA Oct. 7, 1991).

This appeal requires us to decide whether the

Board's "no reopening" exception to its ordinary "reopening"

rule is lawful. The Third and Fifth Circuits have held that

it is lawful. See Katsis v. INS, 997 F.2d 1067 (3d Cir.

1993); Ghassan v. INS, 972 F.2d 631, 637 (5th Cir. 1992),

cert. denied, 113 S. Ct. 1412 (1993); see also Cerna v. INS,

979 F.2d 212, 213 (11th Cir. 1992) (table), aff'g without

opinion Matter of Cerna, Int. Dec. 3161 (BIA Oct. 7, 1991).

The Second and Ninth Circuits have held that it is not. See

Butros v. INS, 990 F.2d 1142 (9th Cir. 1993) (en banc);

Vargas v. INS, 938 F.2d 358 (2d Cir. 1991). We, like the

latter two circuits, do not understand the basis for the "no

reopening" exception. In our view, the Board has not

properly explained why it will consider motions to reopen in

most cases but not in the particular circumstances

illustrated here. We therefore hold that the Board may not

invoke this exception as grounds for refusing to consider

the petitioner's motion to reopen in this case, and we

remand the case to the Board for further consideration of

that motion.

I

A. Legal Background

To understand the issue before us, the reader must

keep in mind the following legal background. First, the INA

lists a host of grounds for excluding or deporting aliens,

including conviction of a drug-related crime. See, e.g., 8

U.S.C. 1182(a)(2) (exclusion), 1251(a)(2)(B)

(deportation). The Act also says that a certain class of

these "deportable" aliens -- those who have lived here for

-3-
3

seven years as aliens "lawfully admitted for permanent

residence" -- can ask the Attorney General (i.e., the Board,

see 8 U.S.C. 1103(a); 8 C.F.R. 3.0, 3.1(a), (b)(3),

212.3(a)(2), (e)(3) (1993)) to exercise a kind of equitable

discretion that would permit them to remain here even though

they have, for example, committed a drug crime. INA

212(c), 8 U.S.C. 1182(c) (see Appendix for text). The Act

defines the class of those eligible for this relief as those

who, for seven years,

hav[e] been lawfully accorded the
privilege of residing permanently in the
United States as an immigrant in
accordance with the immigration laws,
such status not having changed.

8 U.S.C. 1101(20) (emphasis added) (defining "lawfully

admitted for permanent residence").

Second, an Immigration Judge (IJ) normally will

make the initial decision as to whether a particular alien

is "deportable," 8 C.F.R. 242.8(a) (1993), and if so,

whether he is eligible to apply for section 212(c)

"discretionary relief." Id. 212.3(a)(2), (e). If the

alien is eligible, the IJ will further decide whether, given

the "equities," the Attorney General will grant that relief.

Id.; Matter of Marin, 16 I. & N. Dec. 581, 584 (BIA 1978);

see generally 3 Charles Gordon & Stanley Mailman,

-4-
4

Immigration Law and Procedure 74.01[2][a]-[b] (1993). If

dissatisfied with the result, the alien may appeal to the

Board of Immigration Appeals, 8 C.F.R. 3.1(b)(3),

212.3(e)(3) (1993), which may hold a hearing, take evidence

and decide the issues de novo. Hazzard v. INS, 951 F.2d

435, 440 n.4 (1st Cir. 1991); Matter of Lok, 18 I. & N. Dec.

101, 106 (BIA 1981); 1 Gordon & Mailman, supra,

3.05[5][b]. If the Board reaches a negative decision, the

regulations (while phrased negatively, see infra pp. 9 - 10)

indicate that the alien normally may ask the Board either to

reconsider its decision or to reopen the proceeding in light

of "circumstances which have arisen subsequent to the

hearing." 8 C.F.R. 3.2 (1993). The Supreme Court has

pointed out that the regulation governing motions to reopen

"does not affirmatively require the Board to reopen the

proceedings under any particular condition." INS v. Jong Ha

Wang, 450 U.S. 139, 144 n.5 (1981) (per curiam). The issue

before us, however, concerns not whether the Board must

grant the motion, but whether it must consider it.

Third, despite these regulations, the Board has

held in a series of cases that an alien, resident here

lawfully for seven years but under an administratively final

deportation order, may not ask the Board to reopen a

-5-
5

proceeding ordering deportation to obtain further

consideration of "discretionary relief" under section

212(c). The Board has based these holdings on the theory

that a final Board decision ordering deportation means that

the alien's "status" has "changed." He is therefore no

longer "lawfully admitted for permanent residence," see 8

U.S.C. 1101(20), and thus falls outside the category of

those whom section 212(c) permits to ask for discretionary

relief. And since the alien would now be ineligible to

apply for section 212(c) relief in the first instance, see,

e.g., Rivera v. INS, 810 F.2d 540, 541 (5th Cir. 1987), the

Board reasons that he also may not move to reopen a

previously decided section 212(c) application. See, e.g.,

Katsis, 997 F.2d at 1069; Butros, 990 F.2d at 1143. The

Board does not, however, deny the alien the right to move

for reconsideration of the earlier section 212(c)

application. Cerna, slip op. at 5.

B. Factual Background

The case before us involves a resident alien, Jose

Manuel Goncalves, who entered the United States as a baby in

1968 and who has lived here ever since. He has committed

serious crimes, including drug crimes. In late 1989, the

INS began deportation proceedings. Goncalves conceded that

-6-
6

he was deportable. Goncalves then asked the Attorney

General to exercise equitable discretion in his favor under

section 212(c). An IJ rejected this request on May 21, 1991

and ordered him deported. On January 8, 1992, the Board of

Immigration Appeals, after weighing the various equities for

and against Goncalves, also rejected the "discretionary

relief" request and affirmed the IJ, thus rendering

Goncalves' deportation order "final." 8 C.F.R. 243.1

(1993). Goncalves then moved to reopen the deportation

proceeding so that he could present letters and an

employment record that, in his view, amounted to new

evidence of his rehabilitation sufficient to change the

outcome of the Board's "discretionary" calculus.

After a series of proceedings not here relevant,

the Board, on October 8, 1992, denied the motion to reopen

on the sole ground that Goncalves, his "status . . . having

changed" by virtue of the Board's "final" deportation order

of January 8, 1992, was no longer "lawfully admitted for

permanent residence" and therefore "[could] not establish a

prima facie case for relief." The Board did not address the

merits of his request to reopen. Goncalves now appeals the

Board's denial of his motion to reopen. He argues that the

-7-
7

law requires the Board at least to consider it. We believe

he is correct.

-8-
8

II

Analysis

The Board's refusal to allow aliens to make

certain "reopening" motions is, in essence, a detail of its

procedure. In deciding the lawfulness of such a detail, we

recognize that Congress intended the Attorney General to

have considerable leeway in working out the precise

procedures for determining contested issues related to

deportation and "discretionary relief." 8 U.S.C.

1103(a), 1182(c). The Attorney General has delegated the

authority to work out such procedures to the Board. 8

U.S.C. 1103(a); 28 C.F.R. 0.115-0.117 (1991); 8 C.F.R.

3.0, 3.1(a), 3.1(d)(3) (1993). We therefore must respect

the Board's judgment in such matters. See, e.g., FCC v.

Pottsville Broadcasting Co., 309 U.S. 134, 143 (1940); Union

of Concerned Scientists v. Nuclear Regulatory Comm'n, 920

F.2d 50, 54 (D.C. Cir. 1990); American Trucking Ass'ns v.

United States, 627 F.2d 1313, 1320-21 (D.C. Cir. 1980)

(deferring to agency regulations governing intervention on

ground that "procedural regulations are generally within the

discretion of the agency"); Wagner Seed Co. v. Bush, 946

F.2d 918, 920 (D.C. Cir. 1991), cert. denied, 112 S. Ct.

1584 (1992). The Administrative Procedure Act provides,

-9-
9

however, that the Board may not act arbitrarily or "abuse"

its "discretion." 5 U.S.C. 706(2)(A). And, even though

we give the Board considerable leeway, we nonetheless

conclude that it has acted arbitrarily in this instance. We

reach this conclusion for the following three reasons, taken

together.

First, one of the Board's procedural regulations

strongly suggests that it will permit motions to reopen in

cases of this sort. The regulation first makes clear that

"[t]he Board may . . . reopen or reconsider any case in

which it has rendered a decision" (unless the motion is made

after the alien has left the United States). 8 C.F.R. 3.2

(1993) (emphasis added). The regulation then says the

following:

Reopening or reconsideration of any case
in which a decision has been made by the
Board, whether [or not] . . . requested
by the party affected by the decision,
shall be only upon written motion to the
Board. Motions to reopen in deportation
proceedings shall not be granted unless
it appears to the Board that evidence
sought to be offered is material and was
not available and could not have been
discovered or presented at the former
hearing; nor shall any motion to reopen
for the purpose of affording the alien
an opportunity to apply for any form of
discretionary relief be granted if it
appears that the alien's right to apply
for such relief was fully explained to
him and an opportunity to apply therefor

-10-
10

was afforded him at the former hearing
unless the relief is sought on the basis
of circumstances which have arisen
subsequent to the hearing. A motion to
reopen . . . shall not be made by . . .
a person who is the subject of
deportation proceedings subsequent to
his departure from the United States.

Id. We recognize that the regulation is phrased in negative

terms, which means that it does not explicitly grant any

right to anyone ever to ask to reopen a proceeding.

Nonetheless, consider the words

nor shall any motion to reopen for the
purpose of affording the alien an
opportunity to apply for any form of
discretionary relief be granted . . .
unless the relief is sought on the basis

of circumstances which have arisen

subsequent to the hearing.

Id. (emphasis added). Coupled with the Board's explicit

authority to reopen any case, what could those words mean

but that the alien does have a right to move for reopening

to ask for "discretionary relief . . . on the basis of

circumstances which have arisen subsequent to the

rehearing"? See Butros v. INS, 990 F.2d 1142, 1144 (9th

Cir. 1993) (en banc) ("Board's regulations do say[] that you

may have a second round"). But cf. Katsis v. INS, 997 F.2d

1067, 1073 n.6 (3d Cir. 1993) (arguing that the emphasized

language is "hardly a rousing encouragement for or approval

of" using "evidence manufactured after the fact . . . to

-11-
11

support a motion to reopen"). An agency, of course, has

every right to interpret its own rules. E.g., Stinson v.

United States, 113 S. Ct. 1913, 1919 (1993); Bowles v.

Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945). But

there are limits, set by what is "reasonable." Ford Motor

Credit Co. v. Milhollin, 444 U.S. 555, 565-66 (1980);

Commonwealth of Massachusetts, Dept. of Public Welfare v.

Secretary of Agriculture, 984 F.2d 514, 524 (1st Cir. 1993)

("an administrative agency enjoys great latitude to

interpret its own rules as long as those interpretations are

reasonable") (emphasis added). And the agency must follow

its own rules, as reasonably interpreted. Arizona Grocery

Co. v. Atchison, T. & S.F. Ry. Co., 284 U.S. 370, 389-90

(1932).

Second, the Board, while claiming that its

exception is a reasonable "interpretation" of its

regulation, reached that interpretation by following a

complicated logical syllogism that, in our view, is either

irrelevant or erroneous. The syllogism runs approximately

as follows:

(1) The INA allows section 212(c) "discretionary
relief" only upon the request of a resident alien
whose "status" has not "changed." See 8 U.S.C.

1101(20), 1182(c); supra pp. 3 - 4.

-12-
12

(2) The INA does not say just when, during a
deportation proceeding, the alien's "status . . .
change[s]."

(3) The Board thus has considerable legal leeway
in interpreting the statute with respect to the
precise time when "status . . . change[s]."
Chevron U.S.A. v. Natural Resources Defense

Council, 467 U.S. 837 (1984); Matter of Cerna,

Int. Dec. 3161, slip op. at 10 (BIA Oct. 7, 1991)
(citing Chevron).

(4) In Matter of Lok, 18 I. & N. Dec. 101, 106

(BIA 1981), and later cases, the Board held that a
"status change" takes place at the time the Board
enters a final deportation order. E.g., Nwolise

v. INS, No. 91-1173, slip op. at 4, 7 (4th Cir.

Sept. 3, 1993); Perez-Rodriguez v. INS, No. 92-

3081, slip op. at 5, 7 (7th Cir. Aug. 25, 1993);
Rivera v. INS, 810 F.2d 540 (5th Cir. 1987); cases

cited supra pp. 2 - 3,

(5) Once that final deportation order is entered,
then, since the alien's "status" has "changed"
(see step (4)), the alien must be ineligible to

ask for discretionary relief.

(6) A motion to reopen amounts to a request for
discretionary relief.

Therefore, (7) an alien whom the Board orders
deported cannot ask the Board to reopen the
proceeding to request discretionary relief.

The flaw in this syllogism is that step (4) does

not lead to step (5). The law permits the Board to decide

(within reason) when a "change of status" takes place, but

it also permits the Board to decide that moment differently

for different purposes. Cf. Butros, 990 F.2d at 1145

(discussing the "fallacy of . . . the belief that what is

-13-
13

final for certain administrative purposes is final for all

purposes"). In Lok (the source of the problem), the Board

considered a substantive question, namely, whether or not a

person ordered deported after less than seven years of

lawful residence could continue to accrue time towards the

magic "seven years" while his deportation case was on

appeal. Lok, 18 I. & N. Dec. at 102-05. The Board sensibly

held that the "seven year" clock stopped ticking once the

Board ordered deportation. It found that his "status"

"changed" at that moment for the purpose of accruing time.

See Vargas, 938 F.2d at 361 ("Matter of Lok, therefore,

stands only for the proposition that an alien cannot become

eligible for discretionary relief through subsequent accrual

of time towards the seven-year threshold, once he has

conceded that he is deportable."); Lok v. INS, 681 F.2d 107

(2d Cir. 1982); Lok, 18 I. & N. Dec. at 105.

Lok does not mean, however, that the alien's

"status" must also "change" for the purpose of his

eligibility to ask for reopening. After all, the Board

itself agrees that the alien remains eligible to ask for

reconsideration. 8 C.F.R. 3.2 (1993); Matter of Cerna,

Int. Dec. 3161, slip op. at 5 (BIA Oct. 7, 1991). Even

after entry of the Board's "final" deportation order, the

-14-
14

alien can call to the Board's attention evidence already in

the record in an effort to show that the Board's denial of

discretionary relief is unlawful or to convince it to

exercise its "discretion" differently. Cerna, slip op. at

5-6. Moreover, the alien remains free to appeal the denial

of discretionary relief to the courts. The entry of the

Board's final order does not "change" his "status" for this

purpose (if it did, it would moot the appeal by making it

impossible for the alien to receive "discretionary relief"

even if he wins). See Butros, 990 F.2d at 1145. In short,

Lok's substantive conclusion may or may not permit the

procedural exception to the Board's reopening regulations at

issue here, but it certainly does not require it.

Either the Board understands that step (4) does

not compel step (5) (i.e., that Lok and other "substantive"

change of status precedents do not legally compel its

present position on motions to reopen), or it does not

understand that. If it does not, then it has based its

procedural exception upon a legal misunderstanding, in which

case it must reconsider the matter. See Camp v. Pitts, 411

U.S. 138, 143 (1973) (per curiam); SEC v. Chenery Corp., 318

U.S. 80, 93-95 (1943) (where agency's decision rests, in

significant part, upon an incorrect view of what the law

-15-
15

requires, court should set forth the correct view and remand

the case for new agency decision). If it does understand

that its procedural exception does not follow inevitably

from Lok, then it has failed to explain why it adopted that

exception, for its opinions on the matter, and its efforts

to justify the exception in court, rely in large part upon

Lok and a syllogism that is basically irrelevant. That

syllogism -- based upon the substantive "change of status"

statute, 8 U.S.C. 1101(20) -- is irrelevant because the

Board does not need to refer to the "change of status"

statute to justify its procedural "no reopening" exception

if that exception is reasonable, and reference to the

statute cannot help the Board justify the exception if that

exception is not reasonable. The basic question is the

reasonableness of the exception, not the intricate maze of

relationships between it and the substantive statute. And

the reasonableness of the exception seems doubtful, given

the fact that its finely-spun distinctions (e.g., allowing

reconsideration but not reopening) have virtually no

explanation apart from those based on the syllogism. See,

e.g., Cerna, slip op. at 5-7.

Third, we say "virtually" because the Board does

offer one practical consideration in an effort to answer the

-16-
16

question "why is the 'no reopening' exception reasonable?."

It says that the exception is reasonable because it will

prevent aliens from "stringing out" their claims, i.e., by

removing the possibility of the alien's asking for a

reopening, the exception also removes the alien's temptation

to withhold some evidence initially in order to obtain

reopening after an adverse decision. Some courts have

accepted this justification. See, e.g., Katsis, 997 F.2d at

1072, 1074. We cannot do so, however, both because the

Board seems to rely more upon its logical syllogism than

upon this practical justification, see, e.g., Cerna, slip

op. at 3-7, and because the explanation itself raises fairly

obvious questions that the Board has not yet answered.

Why, for example, isn't the Board's printed

regulation -- limiting reopenings to those sought on the

"basis of circumstances that have arisen subsequent to the

hearing," see supra p. 10 -- sufficient to remove the

temptation to withhold evidence, thus obviating the Board's

practical concern? Why is the "stringing out" problem

greater where "discretionary relief" involving seven year

resident aliens is at issue than in other deportation cases?

Why is the "stringing out" problem greater in such cases

than where other "discretionary relief" matters, such as a

-17-
17

request for suspension of deportation under INA 244(a),

are at issue? See 8 U.S.C. 1254(a); 8 C.F.R.

3.1(b)(2), 242.8(a), 242.22, 242.21(a), 244.1 (1993); 3

Gordon & Mailman, supra, 74.07[5][e], [7]. Why does the

Board absolutely forbid motions to reopen section 212(c)

discretionary relief applications? Does it really believe

that circumstances could never change enough, that even the

most heroic, public spirited, self-sacrificing action by a

seven year resident alien, after the "final" deportation

order, could not alter the outcome of the "equity" calculus?

We do not say that no satisfactory answers to these

questions exist, but we do say that the Board seems not to

have asked them.

We stress, and we well understand, that the

exigencies of the practical world in which the Board must

work require that we do not, and we will not, expect the

Board to answer every potentially relevant question

regarding its procedures. Here, however, the problem goes

beyond the fact that the Board has left obvious questions

unanswered. More fundamentally, the Board has not focused

directly on the basic question of whether or not the

particular procedure before us is desirable, nor has it

clearly explained its position. Further, it has instead

-18-
18

unnecessarily relied on a logical syllogism involving a

theoretical analysis of its own cases interpreting a statute

of only marginal relevance to the problem, rather than

squarely facing the practical question of whether the

procedural exception is good or bad. Finally, it has acted

in the face of a regulation that seems rather clearly to

authorize the very kind of "reopening" motion that its cases

then deny. Taking all these circumstances together, we find

the practice insufficiently justified. That is to say, we

find no legally adequate explanation of why the Board has

departed from the rule set forth in its own regulation. We

therefore conclude that the Board's departure from that

regulation is "arbitrary," and we set it aside.

III

Relief

Having set aside the Board's exception that

absolutely forbids motions to reopen, we remand for

consideration of the petitioner's motion to reopen his case.

We shall not decide petitioner's further appeal of the

Board's basic decision to deport him until the Board decides

the motion to reopen.

We also have a suggestion. The circuit courts

have now split three to two about the lawfulness of the "no

-19-
19

reopening" exception. Obviously, the Board will be tempted

to ask for Supreme Court review. There is, however, a

simpler way. Why does the Board not consider amending its

procedural regulations to reach the procedural result for

which it argues here? Cf. Butros, 990 F.2d at 1144 ("The

Board could, no doubt, alter this regulation . . . ."), 1146

(Fernandez, J., concurring) ("If the INS now wishes to adopt

different regulations, that route is available to it."). If

its exception makes sense, and it explains why that is so,

all courts would respect the result. If the exception does

not make sense, the Board will not adopt it, and that will

be the end of the matter. This suggestion is not, of

course, legally binding, and there may be sound reasons not

to follow it. Yet it seems to us to offer a fairly simple

way out of what has become something of a legal morass,

involving five courts of appeals threading their way through

minor procedural details of a highly complex subject.

The petition in No. 92-2272 for review of the

Board of Immigration Appeals' decision is granted, and the

case is remanded for further proceedings consistent with

this opinion. We do not reach the issues presented in No.

92-1122.

So ordered.

-20-
20

APPENDIX

INA 212(c), 8 U.S.C.A. 1182(c) (West Supp. 1993),

provides in pertinent part:

Aliens lawfully admitted for
permanent resident [sic] who temporarily
proceeded abroad voluntarily and not
under an order of deportation, and who
are returning to a lawful unrelinquished
domicile of seven consecutive years, may
be admitted in the discretion of the
Attorney General without regard to the
provisions of subsection (a) of this
section (other than paragraphs (3) and
(9)(C)).

Although on its face this section applies only to resident

aliens who have temporarily left the United States and seek

readmission, case law has extended its application to

resident aliens who have not left the United States. See

Joseph v. INS, 909 F.2d 605, 606 n.1 (1st Cir. 1990);

Francis v. INS, 532 F.2d 268 (2d Cir. 1976); Matter of

Silva, 16 I. & N. Dec. 26, 30 (BIA 1976).

-21-
21