

Paul R. Hribernick, Black Helterline, Portland, OR, for petitioner.

David M. McConnell, Office of Immigration Litigation, Washington, DC, for respondent.

Lauri Steven Filppu, Deputy Director, Office of Immigration Litigation, Washington, DC, for respondent.

**Naim BUTROS, Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 91–70372.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 21, 1993.

Decided April 9, 1993.

Before: WALLACE, Chief Judge, CANBY, REINHARDT, BEEZER, HALL, BRUNETTI, NOONAN, O'SCANNLAIN, LEAVY, TROTT and FERNANDEZ, Circuit Judges.

NOONAN, Circuit Judge:

Naim Butros petitions for review of a decision of the Board of Immigration Appeals (Board) dismissing his motion to reopen a denial of waiver of deportation. We grant the petition for review and remand for further proceedings.

BACKGROUND

Naim Butros entered the United States in February 1975. He was six years old. His status at the time of entry was that of a lawful permanent resident, that is, one

having the "status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20) (1988).

Since the date of his entry, Butros has lived continuously in the United States. His mother, father, brothers, and sister also live in the United States, and he presently resides at home with his family and is gainfully employed.

In 1987 he was convicted of a drug offense in Oregon, and the Immigration and Naturalization Service (INS) moved to deport him. At the hearing he conceded deportability and moved for discretionary relief under section 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c), which reads as follows:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General....

Under case law discretionary relief may be extended not only to aliens seeking to return to the United States but also to resident aliens. *Tapia–Acuna v. INS*, 640 F.2d 223, 224 (9th Cir.1981); *Francis v. INS*, 532 F.2d 268, 272–73 (2d Cir.1976); *Matter of Silva*, 16 I & N Dec. 26 (BIA 1976).

In an oral decision May 26, 1988, the immigration judge found that Butros had not been rehabilitated and denied discretionary relief. He entered an order "that the respondent be deported from the United States to Syria." An appeal to the Board was filed on the same day.

On November 7, 1990, Butros's appeal was summarily dismissed by the Board pursuant to 8 C.F.R. § 3.1(d)(1–a)(i). The Board observed that it had received no written brief or statement of any kind from Butros although he was represented by counsel. The Board concluded that it had not been meaningfully informed of the basis of his appeal. Under the invoked regulation the Board was entitled to dismiss summarily whenever "the party concerned fails to specify the reasons for his appeal on Form I 290A."

Butros got a new lawyer and applied for a stay of deportation with the district director. The application was denied on January 3, 1991.

On January 9, 1991, Butros filed with the Board a motion styled "Motion to Reopen and Reconsider." This motion's opening sentence stated that he moved the Board "to reopen his deportation proceeding and to reconsider summary dismissal" of his appeal. He offered new evidence and also claimed ineffective assistance of counsel. He asked for a stay of deportation.

The Board denied the stay on January 23, 1991. Butros then filed a petition of habeas corpus in the United States District Court for the District of Oregon. On April 23, 1991, the court reversed the district director and the Board and ordered the INS to continue Butros on his existing bond. The district court observed that it could readily see that Butros's claim was "not frivolous." By refusing to grant the stay, the Board and the district director had acted "to effectively foreclose petitioner's right under 8 C.F.R. §§ 3.2, 3.8 to move to reopen this case." The district court concluded that the denial of the stay was an abuse of discretion.

On May 29, 1991, the Board gave its decision on Butros's motion to reopen and to reconsider. The Board held that the deportation order against Butros "became administratively final at the time of our November 7, 1990, decision in this case." The Board continued: "At that point the respondent lost his status as a lawful permanent resident of the United States. He is therefore no longer eligible for a section 212(c) waiver." The Board cited *Gonzales v. INS*, 921 F.2d 236 (9th Cir.1990) as controlling. According to this decision, Butros no longer fitted the statutory description of an immigrant whose status had not changed.

Butros petitioned this court for review. The assigned panel requested an en banc

hearing, which the court then voted to grant.

## ANALYSIS

"We review de novo the Board's determination of purely legal questions regarding the requirements of the Immigration and Nationality Act." *Abedini v. INS*, 971 F.2d 188, 190–91 (9th Cir.1992). Interpretation of the language "such status not having changed", found in the definition of lawful permanent residence, 8 U.S.C. § 1101(a)(20) (1988), is a purely legal question. It was the question decided by the Board. We review the Board's answer de novo.

The Board has issued a regulation on motions to reconsider or to reopen, 8 C.F.R. § 3.2, set out below in a footnote.[1] Most pertinent for our purposes are the title, "Reopening or reconsideration," followed by the provision that the Board on its own motion may "reopen or reconsider any case," and the provision for "reopening or reconsideration at the request of the Commissioner or any affected party." Also relevant is the explicit statement denying an opportunity to reopen "for any form of discretionary relief" if it "appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing." 8 C.F.R. § 3.2 (1992). An absolute barrier to moving to reopen or reconsider is created only as to "a person who is the subject of deportation proceedings subsequent to his departure from the United States." *Id.* The Board could, no doubt, alter this regulation to meet the uncertainties the dissent envisages.

The salient aspect of the present regulation is that the right to move to reconsider or to reopen is in nowise limited by reference to the administrative finality of the Board's initial decision. If the Board's original decision were final as to the status of the petitioner for discretionary relief, then of course there would be no such thing as reconsideration or reopening for the petitioner who lost on the first round. But to say, as the Board's regulations do say, that you may have a second round and at the same time to say, as the Board says here, you may not have a second round, is to engage in contradiction.

The genesis of the Board's present self-contradictory position appears to be *Matter of Lok*, 18 I & N Dec. 101 (BIA 1981). In that case an alien who began to qualify for permanent lawful residence in 1971 was convicted of narcotic offenses in 1973 and ordered deported in 1976. Subsequent petitions travelled twice to the Second Circuit. In its 1981 decision the Board, understandably a little vexed, recast the question it had received on remand from the Second Circuit and decided that the petitioner, once he was found deportable by the Board, could not accumulate time that counted as lawful permanent residence. *Id.* at 104–05.

---

1. The Board may on its own motion reopen or reconsider any case in which it has rendered a decision. Reopening or reconsideration of any case in which a decision has been made by the Board, whether requested by the Commissioner or any other duly authorized officer of the Service, or by the party affected by the decision, shall be only upon written motion to the Board. Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was af-

forded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing. A motion to reopen or a motion to reconsider shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion. For the purpose of this section, any final decision made by the Commissioner prior to the effective date of the Act with respect to any case within the classes of cases enumerated in § 3.1(b)(1), (2), (3), (4), or (5) shall be regarded as a decision of the Board. 8 C.F.R. § 3.2 (1992).

Once the Board had decided that he was deportable, his status changed and he no longer fit the definition of one "lawfully admitted for permanent residence" inasmuch as that definition specified "such status not having changed." *Id.;* 8 U.S.C. § 1101(a)(20) (1988).

The Board noted that to let an alien retain his status as a lawful permanent resident "throughout the judicial proceedings" would "encourage spurious appeals to the courts, made solely for the purpose of accumulating more time toward eligibility for § 212(c) relief." The Board also noted that to hold that an alien under a final order of deportation was still a lawful permanent resident led to results that were "inherently incongruous" such as the alien having the right to accord a designated relative a visa preference so long as the alien remained in this country. Finally, the Board noted that "in those relatively rare instances where the court determines that the Board erred," the reversal of the Board nullified its order and therefore restored the alien's lawful permanent resident status.

*Matter of Lok* was affirmed by the Second Circuit, *Lok v. INS,* 681 F.2d 107 (2d Cir.1982), but, as the Second Circuit later noted, "on narrow grounds." *Vargas v. INS,* 938 F.2d 358, 361 (2d Cir.1991). "[W]e ruled that, for purposes of calculating the seven-year requirement, Lok's status as a permanent resident ended when he failed to appeal the Immigration Judge's finding of deportability." *Id.* at 361.

In our own *Gonzales* case, however, we expanded the reasoning of the Board's decision in *Lok* and held that the Board was right in denying Gonzales's motion to reopen a § 212(c) application for relief because she was statutorily ineligible once the Board had decided her initial appeal against her and upheld the Immigration Judge's order of deportation. *Gonzales,* 921 F.2d at 238. We did so although the issue of finality did not relate to the accumulation of credit as a resident, since Gonzales had entered the country when she was seven years old and had satisfied the seven-year requirement long before depor-

tation proceedings began. *Id.* at 239. We emphasized as a policy reason that "if Section 212(c) were available to persons after an order of deportation is made final, then such applications would never end. An alien who was a lawful permanent resident for seven years and is then deported would, if Gonzales's argument is adopted, be eligible for 212(c) waiver indefinitely, even after being deported." *Id.* at 240.

We now overrule *Gonzales.* The fallacy of *Gonzales* is the belief that what is final for certain administrative purposes is final for all purposes. The Board itself in *Matter of Lok* implicitly conceded that such a comprehensive notion of finality was untenable because it conceded that if a circuit court reversed the Board, the petitioner's status of lawful permanent residence would return. *Matter of Lok,* 18 I & N Dec. at 107. In other words, the Board recognized that when appellate review exists, what looks like a final status can well turn out not to be a final status.

It is equally evident that the same conclusion must be reached when a right to move for reconsideration or a right to move for reopening with the Board exists. The Board may, in fact, reopen or reconsider. It has done so. *See Vargas,* 938 F.2d at 362. Since the Board's own practice, as well as its own regulation, establishes that for purposes of another look by the Board the status is not final, there can be no pretense of anything so simple as one all-embracing notion of finality. What is crystal-clear is that as long as the Board may reconsider or reopen the case, the status of the petitioner in that case for purposes of section 212(c) relief has not been finally determined for purposes of action by the Board. *See id.* at 361. The Board erred in determining that the statutory language on change of status applies to an alien whose case may be appealed, reconsidered, or reopened. The Board's regulations on reconsideration and reopening do not construe the statute, but the existence of these regulations creates the situation on which the statute, which we construe, operates.

As to the concern expressed by *Gonzales* that there will be no end to applications for

discretionary relief, that concern is effectively met by the Board's regulation that no petition for reconsideration or reopening may be made "by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States." 8 C.F.R. § 3.2 (1992).

Because the case before us concerns only the status of a petitioner before the Board, acting under the Board's own regulations and asking for reconsideration or reopening of his case, we have no quarrel with *Matter of Lok* as it was affirmed and interpreted by the Second Circuit. We are not deciding when an alien ceases to accumulate credit toward seven years of lawful permanent residence. By the same token we are not deciding the status of an alien subject to a deportation order for purposes of giving visa priority to a relative.

We do not reach the issues presented by Butros for reconsideration and/or reopening. Rather, we remand to the Board for its determination of these questions.

The Petition is **GRANTED** and the case is **REMANDED** for proceedings not inconsistent with this opinion.

FERNANDEZ, Circuit Judge, with whom BEEZER and HALL, Circuit Judges, join, concurring:

I concur in the majority opinion and write separately to explicate my reasons for doing so.

As I understand it, the majority holds that "finality" in some cosmic sense is *not* really the issue here. Nor must we truly decide what lawful permanent residence means as that phrase is used in 8 U.S.C. § 1182(c) and defined in 8 U.S.C. § 1101(a)(20). Rather, the issue is a simple procedural one; it is a question of whether a determination of the BIA can be reopened and reconsidered at any time, regardless of the type of issue involved. As I see it the majority says, "yes." I do not see that as a radical or shocking answer, so I agree.

We all know that finality is a somewhat fluid concept in law, as it is in nature—at least until the entropy of the universe. For example, in a civil case a decision of a

district court on any issue can be reconsidered and upset long after it has become final. Fed.R.Civ.P. 60(b). Moreover, even criminal decisions, long since final, can be overturned in habeas corpus proceedings. Similarly, the INS in its wisdom has adopted a regulation whose plain words state that any decision is subject to reopening at any time, with the single exception noted in the majority opinion. *See* 8 C.F.R. § 3.2. Thus, the BIA's final decision that a person is not entitled to section 212 relief can be reopened just as any other decision can be. Of course, that is not to say that a particular person will make a convincing argument for reopening; it is just to say that the person is not precluded at the outset.

All of this being so, we need not consider arguments regarding *Chu v. INS*, 875 F.2d 777, 780–81 (9th Cir.1989), a case which involved a species of finality—that is, finality for the purpose of appealing to this court. Nor need we consider our cases regarding the accrual of seven years of residence while the appeal process is going forward. *See, e.g., Avila–Murrieta v. INS*, 762 F.2d 733, 735 (9th Cir.1985). Those cases deal with precisely the same words in the statutory provision that we deal with here. Although it might be exceedingly difficult to say that those words could have different meanings for our purpose than they had in *Avila–Murrieta*, we need not discuss the issue. All we need to do is hold the BIA to the regulations the INS has adopted. If the INS now wishes to adopt different regulations, that route is available to it.

In short, does not the BIA have to follow the regulations until they are changed? I think the answer is yes. Thus, I concur.

TROTT, Circuit Judge, with whom BRUNETTI, Circuit Judge joins, dissenting:

Naim Butros, a permanent resident alien, pleaded guilty to possession of cocaine on July 19, 1987—almost six years ago. On January 21, 1988, an Order to Show Cause was promptly issued by the Immigration

and Naturalization Service charging him with deportability based on his conviction. Butros admitted the allegations of fact, conceded deportability, and sought discretionary relief under Section 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c).

Butros attempted to pull the wool over the eyes of the immigration judge hearing his case. He manufactured excuses for his use of cocaine, falsely claimed he had learned his lesson, and presented himself as completely rehabilitated. However, the INS rebutted Butros's claims with a witness who conclusively established that Butros had sold cocaine on three occasions while on probation for the crime which triggered the deportation proceedings. Evidence was also admitted that Butros had been arrested by an undercover agent in mid-January 1988 in connection with these recent sales. The Opinion of the immigration judge summarizes his view of these revelations and the outcome of the hearing:

> [At the conclusion of Butros's testimony,] I was ready to make a finding of rehabilitation and to make a very favorable ruling to [him]. [Then, the Service presented its case in rebuttal.] I cannot and I do not find that such activity while on probation indicates any degree of rehabilitation whatsoever.... The events surrounding [this] arrest clearly indicate a total lack of rehabilitation. I am further distressed by the respondent's own testimony today. I would make a finding that he deliberately withheld the truth from me which he only admitted after the testimony of the witness, Mr. Fisher, whom I found totally credible in his testimony. Counsel was operating under the illusion that since there is only one conviction that there is no other problem.... I am further distressed by what Mr. Fisher reported to be the conversation in mid-January 1988, only four months ago when respondent was arrested by the undercover agent and said to Mr. Fisher, "You didn't do anything before, why do you think you can do anything now?"

Based on this analysis, relief under § 212(c) was denied. Butros was ordered deported on May 26, 1988—almost five years ago. I write this dissent on March 15, 1993. Butros is still here. He has abused the privilege of living in this country by using and selling cocaine, the latter while on probation no less. When caught, he lied and arrogantly attempted to manipulate the system. Now, he claims he is entitled to another chance to convince the INS he merits discretionary relief. Butros's statement to Fisher that the government is powerless to do anything to him was prescient.

The importance of this case, however, is not so much that Butros is still here, but that we perpetuate an approach by the federal judiciary to the work of the Immigration and Naturalization Service that renders it impotent in many instances to accomplish part of its statutory mission: the appropriate removal from our nation of persons who have forfeited the privilege of residing here. In the main, the majority opinion stands as yet another foray by "the least dangerous" branch of government, The Federalist No. 78 (A. Hamilton), onto the turf of its co-equal neighbors.

## I

### A.

A resident alien conceding deportability, such as Butros, may apply to the Immigration and Naturalization Service ("INS") for discretionary relief if he can demonstrate "a lawful unrelinquished domicile [in the United States] of seven consecutive years." Section 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c). The majority opinion means that such an alien, although denied discretionary relief and ordered deported with administrative finality, remains a lawful resident for the purposes of making a motion to reopen, but that same alien is *not* a lawful resident for the related purpose of continuing to accumulate time towards the eligibility requirement of seven consecutive years. The majority opinion condemns the Bureau of Immigration Appeals' ("BIA") position as "self-contradictory." This is a case of the pot calling the kettle black.

B.

The majority opinion begins its analysis with the wrong standard of review. Mechanically citing a single case, *Abedini v. INS*, 971 F.2d 188, 190–91 (9th Cir.1992), and ignoring important distinctions and refinements in this bread and butter area of appellate jurisprudence, the opinion claims de novo power to interpret the statutes under consideration and to tell the INS how to construe and apply its regulations regarding motions to reopen. I respectfully believe the law is to the contrary. Moreover, stripped of its pretense to the contrary, the opinion really turns not on statutory construction, but on the workings of regulations. Thus, the cited standard of review is irrelevant to the analysis.

The first rule governing our review of the work of a federal administrative agency such as the INS is to accord deference to that agency's interpretation of its governing statute with respect to the filling of "any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). To list all the cases so holding would menace the endangered species of the world who live in trees, so I only cite three in addition to *Morton: INS v. Cardoza-Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987); *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (repeating the quoted language from *Morton* ); and *Ayala-Chavez v. INS*, 944 F.2d 638 (9th Cir. 1990).

*Chevron*, conspicuous by its absence in the majority opinion, explains the workings of this rule of deference:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress

has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 [94 S.Ct. 1055, 1072, 39 L.Ed.2d 270] (1974).

*Id.*, 467 U.S. at 842–843, 104 S.Ct. at 2781–82 (footnotes omitted).

We have incorporated this rule into the law of this circuit, and we have done so with respect to § 212(c) of the Act. In *Ayala-Chavez*, we made these observations:

We review de novo the legal standard applied by the BIA. *Arteaga v. INS*, 836 F.2d 1227, 1228 (9th Cir.1988). *Because Section 212(c) is silent on the applicable legal standard, we must determine whether the administrative agency's standard is based on a permissible reading of the statute. See Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 843 [104 S.Ct. 2778, 2782, 81 L.Ed.2d 694] (1984). 'The court need not conclude that the agency construction was the only one it could permissibly have adopted ... or even the reading the court would have reached if the question had arisen in a judicial proceeding.' *Id.* at 843 n. 11 [104 S.Ct. at 2782 n. 11]. We show considerable deference to the BIA's interpretation of the statutes it administers....

In determining whether the BIA's construction of the statute was permissible, we first note that *courts have always interpreted broadly the discretionary authority of the Attorney General to* grant or deny waiver of deportation. *Inherent in this discretion is the authori-*

*ty of the Attorney General to* grant or deny waiver of deportation. *Inherent in this discretion is the authority of the Attorney General and his subordinates to establish general standards that govern the exercise of such discretion,* as long as those standards are rationally related to the statutory scheme.

944 F.2d at 641 (emphasis added) (citations omitted).

Judicial adherence to this sensible and long-standing principle of review promotes national uniformity in an agency's application of federal law, uniformity which is essential in promoting the goal of treating all people the same, regardless of the federal circuit in which they live. Failure or refusal to adhere to this rule in the form of substituting judicial judgment for that of the agency contributes to the utter disorder in which the INS now operates, disorder generated by dissonant circuit court opinions which can only be called "all over the lot," both in reasoning as well as result. This case, as I shall demonstrate, is an example of what happens when different circuits tackle the same problem without deferring to the agency in charge.

### C.

The present appeal does deal with a "gap," an area of the law in which there is no statutory guidance. Nowhere do the statutes provide any guidance as to when in the administrative process eligibility for discretionary relief ceases, nowhere in the statutes is there any guidance as to when time ceases to accrue against the seven-year requirement, and nowhere in the Act is there anything about reopening to present new evidence or considerations. Furthermore, the majority opinion's conclusions as noted stem essentially from a disagreement it has with the INS's application of its permissive regulations governing reopening.[1]

Congress has not spoken on the issue of reopening deportation proceedings. As the Supreme Court has observed:

There is no statutory provision for reopening of a deportation proceeding, and the authority for such motions derive solely from regulations promulgated by the Attorney General.... The granting of a motion to reopen is thus discretionary, and the Attorney General has "broad discretion" to grant or deny such motions.... This is especially true in a deportation proceeding where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.

*INS v. Doherty,* — U.S. —, —– – —, 112 S.Ct. 719, 724–725, 116 L.Ed.2d 823 (1992) (citations omitted). Thus, "the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program," *Cardoza–Fonseca,* 480 U.S. at 448, 107 S.Ct. at 1221 (citations omitted), unless that interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. "In this government of separated powers, it is not for the judiciary to usurp Congress' grant of authority to the Attorney General by applying what approximates de novo appellate review." *INS v. Rios–Pineda,* 471 U.S. 444, 452, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985).

### D.

The issue in this case is whether an alien who has *conceded* deportability and been denied discretionary relief under § 212(c) of the Act may be precluded by the Board of Immigration Appeals ("BIA") from making a motion to *reopen* for additional § 212(c) *discretionary* consideration on the ground the alien is no longer eligible for such consideration. The Board's reopening regulations are permissive only. An alien does not have a right to reopen. Although the regulations preclude the granting of such a motion under some circumstances, there is no indication that in all other circumstances due consideration need be giv-

---

**1.** Butros's motion was both to reconsider and to reopen. Implicit in the BIA's opinion is a deni-

al of the motion to reconsider.

en to the request. It is false to claim that all we are doing is forcing the INS to abide by its own regulations. In that connection, the BIA has determined that the "lawful permanent resident status" needed to qualify for § 212(c) relief ends when an administratively final order of deportation is entered, barring subsequent reversal on the merits of the finding of deportability. Thus, although a motion to *reconsider* will be entertained, a motion to reopen—which is based on new evidence—will not. We approved this rule in *Gonzales v. INS*, 921 F.2d 236 (9th Cir.1990). All the INS has said is that once an alien is no longer a lawful resident as far as the INS is concerned, that alien's relief from the INS is limited to whatever he or she might gain on a motion to reconsider or by way of a victory on a petition to review. The message to the deportable alien is, "You had your opportunity to convince us, you failed, and we need not give you an opportunity to reopen to try to convince us otherwise with new evidence." Was the INS supposed to decide with administrative finality that Butros was no longer a lawful domiciliary, but yes he was if he wished to make a motion to reopen?

In my view, the INS's approach is both rational and reasonable and should be permitted to stand. Here, from the government's brief, is the BIA's explanation of its position adopted after a careful evaluation of the points in a deportation proceeding at which the alien's lawful resident status might be considered to have "changed" within the meaning of Section 101(a)(20) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(20):

> The Board concluded that termination of status would be "premature" upon a finding of deportability by an immigration judge because an alien has a right to an appeal from this finding, and the Board may review the record *de novo* and make its own independent determina-

tions of law or fact. The Board also rejected the opposite extreme—that an alien remains a lawful permanent resident until the deportation order is executed. The Board found this idea "inherently incongruous," noting as an example the fact that under such a rule "a clearly deportable alien who has exhausted all his judicial appeal rights but whose departure cannot for some reason be enforced ... may continue to accord designated relatives visa preference so long as he remains in this country."

> The Board likewise declined to adopt the view that lawful status continues after a final administrative order of deportation is entered, and through the judicial appellate process. Although an alien has a right to judicial review of the Board's order, the Board reasoned, such review is limited. Moreover, such a rule would, as noted above, encourage "spurious appeals" to the courts, made solely to accumulate more time toward eligibility for § 212(c) relief.

> The Board accordingly settled upon its rule that lawful resident status terminates upon the entry of a final administrative order of deportation.... It makes no logical sense to grant a motion to *reopen* deportation proceedings for the purpose of considering an alien's application for § 212(c) relief when an alien has lost *prima facie* eligibility for such relief because he or she is no longer is [sic] a permanent resident.

(citations omitted).

This is a cogent solution to a problem which has no obvious or clear answer. As such, I would accord the BIA's solution the considerable weight it is due under *Chevron*. This solution is a reasonable accommodation of the competing interests. Instead, we reverse today our position taken in *Gonzales* and aggravate what is already a sorry state of inter-circuit conflicts.[2]

---

**2.** In passing, I would point out that no person reading the plain language of § 212(c) could ever understand how it applies to this case in the first place. On its face, it covers only situations where an alien has "temporarily proceeded abroad voluntarily," and it gives the Attorney

General discretion to admit such an alien when "returning to a lawful unrelinquished domicile of seven consecutive years...." Immigration and Nationality Act, § 212(c), 8 U.S.C. § 1182(c). How this language was twisted to cover the situation presented in this case is

## II

A review of the current state of the law supports my pejorative description. In Louisiana, Mississippi, Texas, and most probably Indiana, Illinois, and Wisconsin, the current rule is that lawful status is terminated in connection with a petition for § 212(c) relief when a deportation order becomes administratively final. *Variamparambil v. INS*, 831 F.2d 1362 (7th Cir. 1987); *Rivera v. INS*, 810 F.2d 540 (5th Cir.1987). To quote the Fifth Circuit:

> In sum, the conclusion of the BIA as to when the alien's lawful resident status terminates is a *sensible* one. It gives the alien ample time to assert his claim for section 212(c) relief and prevents him from litigating his various claims in piecemeal fashion.

*Rivera*, 810 F.2d at 542 (emphasis added); *see also Prichard–Ciriza v. INS*, 978 F.2d 219, 223 (5th Cir.1992); *Ghassan v. INS*, 972 F.2d 631, 637–38 (5th Cir.1992). The Seventh Circuit currently agrees with the Fifth Circuit, although it has done so in a case where the eligibility question hinged on whether the alien had accumulated the requisite seven years of lawful domicile necessary to qualify for § 212(c) consideration. The Seventh Circuit explicitly relied on *Rivera* to support its holding that *eligibility* for § 212(c) relief is measured as of the date the Board affirmed the deportation order. The court said, "We agree with the Fifth Circuit that the Board's interpretation of § 212(c) is reasonable and reflects a careful consideration of the alternatives." *Variamparambil*, 831 F.2d at 1367.

In Alabama, Florida, and Georgia, however, the cutoff date of the accrual of the time needed for § 212(c) eligibility is neither the date the deportation order becomes administratively final, nor the date the Board may no longer reconsider or reopen the case, but the date "upon which the INS commences the deportation proceedings, i.e. when the order to show cause is issued." *Marti–Xiques v. INS*, 741 F.2d 350, 355 (11th Cir.1984); *see also Ballbe v. INS*, 886 F.2d 306, 309 (11th Cir.1989), *cert. denied*, 495 U.S. 929, 110 S.Ct. 2166, 109 L.Ed.2d 496 (1990). The Eleventh Circuit appears to have ignored the INS's suggested approach and rejected the Second Circuit's approach in *Lok v. INS*, 681 F.2d 107 (2d Cir.1982), which permits time to accrue until the deportation order becomes administratively final.

In Connecticut, New York, and Vermont, it is unclear what the rule on ineligibility is. The Second Circuit, in a freewheeling opinion that does not appear to appreciate the difference between motions to reopen on one hand and motions to reconsider on the other, rejected our panel's approach in *Gonzales* but did not bother to indicate precisely what rule it would apply to this situation. *Vargas v. INS*, 938 F.2d 358 (2d Cir.1991).[3] In so doing, it limited its holding in *Lok* to the proposition "that an alien cannot *become* eligible for discretionary relief through subsequent accrual of time towards the seven-year threshold, once he has conceded that he is deportable." *Id.* at 361 (citing *Lok*, 681 F.2d at 110). *Vargas* labels "arbitrary and capricious", *id.* at 359, the approach that *Rivera* calls "sensible." The Second Circuit explicitly aligned

---

interesting. In a nutshell, aliens who had *not* left the country and were seeking discretionary relief from deportation argued they were denied equal protection and due process when compared to aliens who had left the country and therefore could resort to § 212(c). We agreed and held "eligibility for § [212(c)] relief cannot constitutionally be denied to an otherwise eligible alien who is deportable under § 1251(a)(11), whether or not the alien has departed from and returned to the United States...." *Tapia–Acuna v. INS*, 640 F.2d 223, 225 (9th Cir.1981). In effect, we rewrote the statute.

**3.** The *Vargas* panel stated that a motion to *reopen* "requests no new relief, but simply asks

the BIA to reevaluate a prior action." *Vargas*, 938 F.2d at 363. This premise appears to be wrong. A motion to *reopen* is based on new evidence. A request to reevaluate on a settled record is a motion to reconsider. This distinction is substantive because the BIA does permit motions to *reconsider* notwithstanding the administrative finality of the deportation order at issue. *See Chudshevid v. INS*, 641 F.2d 780, 783 (9th Cir.1981) ("A motion to reopen and a motion to reconsider are two separate and distinct motions with different requirements, although they are discussed together in the same regulations.")

itself with Judge Williams's dissent in *Rivera, id.* at 362–63, which refers to the BIA's rule as an "oppressive whim." *Rivera,* 810 F.2d at 542 (Williams, J., dissenting). Curiously, the court in *Vargas* rejected as a "post-hoc explanation" the INS's invocation in its defense of *Chevron.* 938 F.2d at 363. The rule of deference, however, is not an "explanation" of anything: it is a standard of review. The Second Circuit's treatment of *Chevron* is simply unsatisfactory. So much for guidance and coherence. Too many cooks have rendered the soup inedible.

Until today, the "sensible" rule applicable in the Fifth and Seventh Circuits prevailed also in Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Washington, Guam, and the Northern Mariana Islands. *See Gonzales,* 921 F.2d at 240. Now, prompted by an issue involving appellate jurisdiction, *Chu v. INS,* 875 F.2d 777 (9th Cir.1989) (with respect to jurisdiction on appeal, a deportation order can be rendered nonfinal by a subsequently filed motion either to reopen or to reconsider), this rule is abandoned, cementing a multifaceted "circuit split" and creating even more uncertainty for the INS. The majority opinion holds that "as long as the Board may reconsider or reopen the case, the status of the petitioner in that case for purposes of § 212(c) relief has not been finally determined for purposes of action by the Board."

This rule, however, raises more questions than it answers. Would a motion to reconsider the denial of a motion to reopen prevent the quickening of finality? Will a series of such motions made by an alien fighting deportation stave off the ripening of appellate jurisdiction under *Chu* ? Will these proceedings ever come to a conclusion? The majority opinion would do well to give this new rule more thought and more substance. It would appear, as it does to the INS, that this new rule "would recognize no finality (other than the 'physical deportation' of the alien from the Unit-

ed States) to an alien's right to seek reopening of deportation proceedings to further pursue an application for such relief even beyond the point that a loss of lawful permanent resident status clearly has occurred." *Matter of Cerna,* Int.Dec. 3161 app. at 11 n. 1 (BIA Oct. 7, 1991). *Compare Rios–Pineda,* 471 U.S. at 450–51, 105 S.Ct. at 2102–03 (admonishing against "judicially augmented incentives" that would permit an alien conceding deportability to drag out the process). Parenthetically, the majority opinion disclaims any intent to side with *Vargas* on the issue of when an alien ceases to accumulate time towards the required seven years, but the die is cast.

Thus, at least three different and inconsistent rules exist to deal with essentially the same problem.[4] What happens to an alien in this context depends entirely on *where* it happens. If this isn't arbitrary and capricious, as the saying goes, I don't know what is.

Imagine what we would say if Congress had enacted this law:

> Eligibility for § 212(c) relief ceases (1) in Louisiana, Mississippi, Texas, Indiana, Illinois, and Wisconsin, when a deportation order becomes administratively final; (2) in Alabama, Florida, and Georgia, when the order to show cause is issued; (3) in Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Washington, Guam, and the Northern Mariana Islands, when the Board may no longer reconsider or reopen the case; (4) in Connecticut, New York and Vermont, under a rule which is different from the rule in Louisiana, Mississippi, Texas, Indiana, Illinois, and Wisconsin but not clearly stated; and (5) elsewhere, depending on the option chosen by the judges of the U.S. Courts of Appeal.

Such a law would not pass even a "straight face test," much less be able to claim a rational basis for its existence. No doubt, with our penchant for rational bases, due

---

4. This approach brings to mind the admonition of a Supreme Court Justice to me before I became a judge: "Never forget who you are writing for, and when you are finished, make sure they will know what they are supposed to do." If we are going to make up the rules, at least those rules should be intelligible.

process, and equal protection, we would strike it down as manifestly unconstitutional. *See, e.g., Tapia–Acuna v. INS,* 640 F.2d 223 (9th Cir.1981). We might even take a swipe or two at Congress for having lost its mind. Yet today we effectively impose such a bizarre law on the United States because we disagree with the INS on an issue which is INS's to decide. *Compare INS v. Jong Ha Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981) ("[The Attorney General's interpretation of the Act] should not be overturned by a reviewing court simply because it may prefer another construction of the statute."). The federal appellate establishment seems obsessed with micromanaging the INS to the point of disinterest in the national result. When the emperor's skin is showing to this extent, he must be told to cover up. If we needed an example to validate *Chevron* and to highlight the mischief of de novo review in this area, this is it. Furthermore, inherent in the majority opinion's suggestion that the INS could change its regulations to cope with my concerns is an admission that the *statutes* provide no barrier to the INS's approach to reopening. This concession is further proof that de novo review is inapposite.

I believe, as do the Fifth and Seventh Circuits, that our holding in *Gonzales* is sound. I would affirm that holding. I would straighten out the perceived discord between *Gonzales* and *Chu* by pointing out that they address fundamentally different issues, and that by adding § 106(a)(6) to the Immigration Act of 1990, Congress seems to have resolved the problem by mandating consolidation of a review from an order of deportation with a review sought with respect to a motion to reopen or reconsider that order. Immigration and Nationality Act, § 106(a)(6), 8 U.S.C. § 1105(a)(6). This makes it easy to do what we did in *Chu,* which was to say that *we* lack jurisdiction to review a deportation order until it is final, and that such an order is not final as long as it is the subject of a *pending* motion either to reconsider or to reopen. *Chu v. INS,* 875 F.2d 777 (9th Cir.1989). Thus, when a matter gets to us, *everything* will be consolidated and heard at one sitting. *See also Fleary v. INS,* 950 F.2d 711, 712–13 (11th Cir.1992); *Fayazi–Azad v. INS,* 792 F.2d 873 (9th Cir.1986); *Hyun Joon Chung v. INS,* 720 F.2d 1471 (9th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984). The INS takes issue with *Chu,* as does the Third Circuit in *Nocon v. INS,* 789 F.2d 1028 (3rd Cir.1986), but that disagreement has been shelved by the majority opinion's decision to disregard it. Parenthetically, the Seventh Circuit in *Akrap v. INS,* 966 F.2d 267, 271 (7th Cir.1992), has recently rejected *Fleary,* and, by implication, *Chu* also.

### CONCLUSION

The INS continues to be pulled in all directions at once by fractious circuits. Maybe the Supreme Court will iron out all of these impossible wrinkles, or maybe the INS will take this to Congress for repair. Time will tell. Meanwhile, Butros, who has arrogantly abused the privilege of living here by selling drugs and lying to an immigration judge, stays put. The proof of this pudding is in the eating. It is unpalatable. I respectfully dissent.