8 F.3d 34
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Theodore August WITTENBERG, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-70638.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 8, 1993.
Decided Sept. 28, 1993.
 
 Before FLETCHER, POOLE and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Theodore Wittenberg, a native and citizen of Germany, appeals the Board of Immigration Appeals' ("BIA" or "Board") decision reversing the immigration judge's ("IJ") grant of waiver of inadmissibility under Section 212(c) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1182(c) (1988). Wittenberg argues that because he was lawfully admitted for permanent residence in the United States in 1955, he is eligible for waiver under Section 1182(c). Wittenberg further argues that he is eligible for other relief, including waivers of inadmissibility under Sections 1182(g), (h) and (i), and suspension of deportation under Section 1254(a).
 
 
 3
 The BIA had jurisdiction to review the decision of the IJ pursuant to 8 C.F.R. § 3.1(b)(3). Our jurisdiction rests on 8 U.S.C. § 1105a(a). We "review de novo the Board's determination of purely legal questions regarding the requirements of the Immigration and Nationality Act." Butros v. INS, 990 F.2d 1142, 1144 (9th Cir.1993) (en banc) (citing Abedini v. INS, 971 F.2d 188, 190-91 (9th Cir.1992)). Whether petitioner is statutorily eligible for relief under Section 1182(c) and whether his applications for alternative relief were abandoned are questions of law subject to de novo review. See Monet v. INS, 791 F.2d 752, 753 (9th Cir.1986) ("[t]he issue presented here--whether, as a result of a prior conviction, petitioner was never 'lawfully' admitted for permanent residence within the meaning of section 1182(c)--is a question of law"). We vacate the order of deportation and remand for consideration of Wittenberg's alternative claim for relief under Section 1182(c) and, if necessary, of his other claims for relief not addressed by the BIA."[1]
 
 I.
 Facts
 
 4
 Wittenberg first entered the United States as a lawful permanent resident in 1955. He fathered two children, both born in the United States, and then married their mother, an American citizen. In 1964 he pled guilty to two separate crimes of involuntary manslaughter and child endangerment. He was convicted and sentenced to a prison term of six months to ten years on the manslaughter conviction and one year on the endangerment conviction, both sentences to run concurrently. From 1964 to 1968, Wittenberg served his prison term in the custody of the California Department of Corrections. Upon parole from jail, he went to Germany, where he was joined by his family for the duration of his parole term. Before leaving the United States, he turned over the green card he had acquired on the basis of his 1955 immigrant visa. In 1970, two years after leaving the United States and shortly after receiving his discharge papers, Wittenberg sought to return to the United States with his family. He was admitted in late 1970 on a second immigrant visa and received a second green card. Six years later, in 1976, the INS initiated deportation proceedings against him. The order to show cause ("OSC") charged Wittenberg as deportable under Section 1251(a)(1) because he was excludable under Section 1182(a)(10) on account of two convictions for which the aggregate sentences actually imposed were five or more years. It listed the manslaughter and endangerment convictions as two prior convictions within the terms of Section 1182(a)(10). In 1977 an IJ found one of these convictions involved a crime of moral turpitude[2] and continued the deportation hearing to allow the petitioner to file for relief. Ten years later, a different IJ assumed that Wittenberg's permanent residency was lawful, and on that express assumption, found him eligible for discretionary relief under Section 1182(c). The government appealed on the narrow ground that Wittenberg had not been lawfully admitted (the first prerequisite for Section 1182(c) relief) and focused solely on his 1970 entry. The BIA sustained the appeal on a commensurately narrow basis, deciding, as a matter of law, that the circumstances of Wittenberg's 1970 entry precluded statutory eligibility for Section 1182(c) waiver of inadmissibility. Wittenberg did not submit a brief in opposition to the appeal and there was no oral argument before the Board.
 
 II.
 Section 1182(c) Waiver
 
 5
 Aliens who seek admission to the United States may be excluded if they fall within any of the categories enumerated in 8 U.S.C. § 1182(a). Section 1182(c) waives the exclusion or deportation[3] of certain aliens who are lawful permanent residents of the United States. It provides:
 
 
 6
 Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)-(25), (30), and (31) of [§ 1182(a) ].
 
 
 7
 8 U.S.C. § 1182(c). To be eligible for relief, a petitioner must establish that: (1) he was lawfully admitted for permanent residence; (2) without being under an order of deportation, he proceeded abroad temporarily and voluntarily; (3) he has established a domicile in the United States of seven years; and (4) he "deserves the favorable exercise of discretion."[4]
 
 
 8
 The Act defines the first requirement: "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). Lawfully accorded permanent residence may be based on a valid immigrant visa. An immigrant's status does not change simply upon leaving the country for a period. See Gooch v. Clark, 433 F.2d 74, 79 (9th Cir.1970), cert. denied, 402 U.S. 995 (1971) ("the definition refers not to the actuality of one's residence but to one's status under the immigration laws") (emphasis in original).[5] Permanent resident status "changes" within the meaning of Section 1101(a)(20) when the alien is excluded or deported. No uniform rule of decision exists for determining when an alien in deportation or exclusion proceedings loses his permanent residence status. See Matter of Cerna, Int.Dec. 3161 (BIA 1991) (appendix analyzing the conflicting holdings of Second, Fifth, Ninth and Eleventh Circuits). We recently held that an alien's "status" does not "change" until the administrative determination is final. Butros, 990 F.2d at 1145, overruling Gonzales v. INS, 921 F.2d 236 (9th Cir.1990) ("[t]he Board erred in determining that the statutory language on change of status [§ 1101(a)(20) ] applies to an alien whose case may be appealed, reconsidered, or reopened"). Upon actual deportation, Sections 1101(a)(20) and 1182(c) interact to preclude relief. The deportee's status has "changed" (8 U.S.C. § 1101(a)(20)) and his "proceed[ing] abroad ... [is] under an order of deportation" (8 U.S.C. § 1182(c)).
 
 
 9
 Wittenberg argues that "[a]bsent a final administrative order of deportation against him, [he] did not lose his permanent resident status ... lawfully acquired when he was admitted on May 31, 1955." Petitioner's Brief at 10-11. He implicitly assumes that permanent residence status can only be terminated for this reason. The government contends, on the other hand, that Wittenberg's status "changed" when he relinquished his first green card in 1968 and applied anew for entry as an immigrant in 1970. The BIA noted Wittenberg's entry as an immigrant in 1955 but did not consider its effect on his eligibility for the Section 1182(c) waiver. Its decision rests on the narrow legal determination that Wittenberg's permanent resident status based on the 1970 visa is not lawful, and that, as a result, he fails to meet a statutory prerequisite for relief under Section 1182(c). We turn to Wittenberg's claim that he is a lawful resident alien based on his 1955 admission.[6]
 
 
 10
 Courts have been reluctant to set forth definitively the circumstances in which an alien's status may legally change. See Gooch, 433 F.2d at 79 (suggesting that section 1101(a)(2) language "refers primarily to aliens who have changed their status from immigrants to nonimmigrants ") (emphasis added); see also Matter of Kane, 15 I. & N.Dec. 258, 260 & n. 1 (BIA 1975) (noting that "change in status Congress had in mind [in § 1101(a)(20) ] was a change from an immigrant lawfully admitted for permanent residence to the status of a nonimmigrant" but collecting other cases in which status is determined to have changed). Intentional abandonment of lawful permanent resident status causes that status to be lost or changed. Matter of Huang, 19 I. & N.Dec. 749, 752, 755 (BIA 1988); Matter of Muller, 16 I. & N.Dec. 637, 639-40 (BIA 1978); Matter of Kane, 15 I. & N.Dec. at 260 n. 1. Whether an alien has lost his permanent residence status, therefore, involves both factual and legal questions. The subjective intent of the alien (whether he abandoned his status) and the absence of any legal determination precluding recognition of lawful permanent residence (whether he has been deported or excluded or is subject to a final determination of deportability or excludability) both come into play. That a petitioner is not subject to a final administrative order of deportation is not, in itself, dispositive of his claim of lawful permanent residence status.
 
 
 11
 The government emphasizes that Wittenberg turned over his 1955 green card to an officer (apparently a California prison-system employee) upon his 1968 departure. The record does not disclose why he did so. The government has not asserted that his departure came about as a result of deportation proceedings. There is no evidence that any legal proceeding of the INS or any other federal agency formally stripped Wittenberg of his green card and the status it signifies.[7] Wittenberg simply states that he "handed" his card to the "officer from the Penal Code System" who escorted him to the airport. The California officer's act of receiving petitioner's green card does not constitute the legal termination of his federal immigration status. Although Wittenberg describes himself as having been "paroled to Germany" in 1968, he does not employ that term in the technical sense used in the INS context.[8] Rather he appears to be referring to his parole from prison and his decision to serve his term in Germany.
 
 
 12
 Nor, as a matter of law, does the act of applying for a second immigrant visa alter Wittenberg's status as a lawful permanent resident. "The fact that an alien did not apply for or obtain a reentry permit is not to be automatically construed as an intention to abandon residence; rather ... [it must be determined] whether the alien's failure to do so reflected an intention to abandon residence." See 1 Ytreberg, supra note 5, § 5:37 at 50. Application for an immigrant visa by one who already enjoys lawful permanent resident status is at most redundant. Wittenberg did not apply for a nonimmigrant tourist visa. Cf. Gooch, 433 F.2d at 79 (status is "changed" when immigrant becomes nonimmigrant). He did not repudiate his legal claim to lawful permanent residence. See 1 Ytreberg, supra note 5, § 5:38 at 51 ("[a]n alien is not ineligible for classification as a returning permanent resident alien solely because he or she was previously issued a visitor visa as a matter of convenience during a stay abroad when time did not permit the alien to obtain a returning resident visa"). We conclude that as a matter of law Wittenberg is not precluded from asserting ongoing permanent resident status based on his 1955 entry.[9] Nevertheless, the factual question remains open as to whether, in leaving the United States, he intended to abandon and in fact abandoned that status.
 
 
 13
 The factual determination of whether Wittenberg has permanent resident status based on his 1955 entry is properly made by an IJ and the BIA. On remand the BIA should remand to the IJ for development of a factual record. Among the matters the IJ should explore in determining whether Wittenberg intended to abandon his lawful permanent residence secured in 1955 are such things as the reason Wittenberg served his parole term in Germany rather than the United States; the circumstances of the surrender of his first green card and his reapplication for entry into the United States; the significance of his return to the United States shortly after his parole term expired and his monthly contact with his parole officer. We note that under Matter of Huang, 19 I. & N.Dec. at 754, where an applicant has "a colorable claim to returning resident status," the burden is on the government to prove that it has not been met because "the applicant's status has changed by clear, unequivocal, and convincing evidence."
 
 
 14
 Because the record before us is insufficient, we do not decide whether Wittenberg meets the second and third statutory prerequisites for Section 1182(c) relief.[10] We leave it to the BIA or the IJ to develop the record in the first instance on remand.
 
 III.
 Alternative Applications for Relief
 
 15
 The government explains the BIA's failure to address Wittenberg's eligibility for alternative forms of relief, including suspension of deportation under Section 1254(a) and waiver of inadmissability under Sections 1182(g), (h) and (i), as the result of his abandoning these claims. No explanation is given by the BIA. Its decision reversing the IJ notes only one "application" for relief, that under Section 1182(c).[11] While this was the basis for relief granted by the IJ, and appealed by the government, it was not the only basis upon which relief was sought. Unless Wittenberg affirmatively abandoned his other claims, the limited scope of the government's appeal does not operate to restrict the avenues of relief available to him.
 
 
 16
 Both the government and Wittenberg agree that, as an initial matter, Wittenberg sought suspension of deportation and waiver of inadmissibility based on provisions other than Section 1182(c). They disagree about the significance of an exchange between the IJ and Wittenberg's counsel regarding the necessity of pursuing one of those alternative grounds if petitioner's lawful permanent residence was conceded.[12] In our view, this exchange evidences at most a conditional withdrawal of the application for suspension of deportation. Wittenberg merely agreed not to pursue superfluous claims before the IJ after the IJ made it apparent that it would be unnecessary. This agreement hardly constitutes an abandonment of those other claims.
 
 IV.
 Conclusion
 
 17
 For the foregoing reasons, we vacate the order of deportation, Castillo-Villagra v. INS, 972 F.2d 1017, 1031 (9th Cir.1992), Jara-Navarette v. INS, 813 F.2d 1340, 1341 (9th Cir.1986), and remand for consideration of whether Wittenberg is eligible for Section 1182(c) relief based on his 1955 entry. On remand the BIA should also consider, if necessary, Wittenberg's other claims for relief.
 
 ORDER OF DEPORTATION VACATED AND REMANDED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the IJ ruled in his favor on one of his alternate theories for Section 1182(c) relief, Wittenberg had no occasion to pursue his other claims for relief. These other grounds for relief were also not addressed before the BIA
 
 
 [2]
 This determination is not relevant to Wittenberg's deportability under Section 1182(a)(10), which states that two convictions suffice "regardless of whether the offenses involved moral turpitude." 8 U.S.C. § 1182(a)(10)
 
 
 [3]
 While Section 1182(c) is on its face applicable only to exclusion proceedings, it has been extended to apply to aliens in deportation proceedings as well. See Monet v. INS, 791 F.2d 752, 753 (9th Cir.1986) (citing Matter of G.A., 7 I. & N.Dec. 274, 276 (1956); Tapia-Acuna v. INS, 640 F.2d 223, 224 (9th Cir.1981)). The OSC charges Wittenberg with deportability under 8 U.S.C. § 1251(a)(1) for entering as an excludable alien under 8 U.S.C. § 1182(a)(10)
 
 
 [4]
 2 Charles Gordon & Stanley Mailman, eds., Immigration Law and Procedure, § 60.03 at 60-3 (1993); 3 Gordon & Mailman, id., § 74.03[c]-[e]; see also Gregory G. Sarno, Annotation, Eligibility, for Discretionary Admission under § 212(c) of Immigration and Nationality Act of 1952 (8 U.S.C.S. § 1182(c)), of Alien Returning to Unrelinquished Domicile after Trip Abroad, 80 A.L.R.Fed. 8 (1986); 2 Dag E. Ytreberg, ed., The Immigration and Naturalization Process, §§ 16:54, 16:69-75 at 44-45, 59-64 (rev. ed. 1992)
 
 
 [5]
 The Act and accompanying regulations provide for the maintenance of this status. Before leaving the United States, a permanent resident may apply for a reentry permit. Cf. Gamero v. INS, 367 F.2d 123, 125 (9th Cir.1966) (certificate permitting return); see also 1 Dag E. Ytreberg, ed., The Immigration and Naturalization Process, § 5:37 at 50 (rev. ed. 1991). Permanent residents may deposit their permanent resident or green cards with the American consulates in the foreign countries to which they have departed. See Matter of Escalente, 13 I. & N.Dec. 223, 224 (BIA 1969) (American Consulate in Ecuador held green card on behalf of petitioner for three years). If documents demonstrating the lawfulness of a petitioner's permanent resident status are not available, the documentary requirements for returning lawful permanent resident may be waived. See 2 Gordon & Mailman, supra note 4, § 62.02 at 62-2 to 62-4, 8 U.S.C. § 1181(b). In certain circumstances, lawful admission is simply presumed. 8 C.F.R. § 101.1, 101.2
 
 
 [6]
 On appeal, Wittenberg chooses not to contest the BIA's analysis and authorities for denying waiver based on his 1970 admission. He contends that this determination is irrelevant so long as permanent resident status is understood to have been acquired in 1955. At this point in the proceedings we need not pass on the lawfulness of Wittenberg's permanent residency as taken up in 1970. In Wittenberg's case, the question is whether he meets the lawful permanent residence requirement of Section 1182(c), not when. (Using either the 1955 or the 1970 benchmark, he would maintain his eligibility under the seven-year continuous residency test.)
 
 
 [7]
 Nor does the administrative record contain any indication of the conditions of Wittenberg's parole. The judgment entered upon his plea to involuntary manslaughter notes that "Defendant [must] ... file written application for probation," but no application is included in his file
 
 
 [8]
 The Attorney General has the discretion to authorize the entry to the United States of those seeking admission by means of "parole." See 2 Gordon & Mailman, supra note 4, § 64.01 at 64-2 to 64-3 ("[t]he term 'parole' is nowhere defined, and it may encompass a variety of situations in which temporary entry or stay in the United States is authorized") (emphasis added)
 
 
 [9]
 Even if, as the BIA concluded, Wittenberg's entry in 1970 did not qualify him as lawfully admitted for permanent residence, that determination alone would not undermine his claim that he was lawfully admitted in 1955. The INS has not charged Wittenberg as deportable for fraud or misrepresentation (8 U.S.C. § 1182(a)(19)). Contrary to the BIA's position that he "admittedly concealed his two 1964 convictions when he applied for lawful permanent resident status in 1970", Wittenberg asserts that he left the application forms blank in order to discuss them with a consular officer. He makes no admission of concealment, but rather admits the very convictions he is charged with concealing
 
 
 [10]
 The government does not contest, nor does it seem contestable, that Wittenberg resided in the country at least seven years after he acquired permanent resident status, whether measured from the 1955 or 1970 entries. None of these years were accrued as a result of petitioner filing frivolous appeals during a deportation proceeding, and thus they are not subject to discount as a discretionary matter. See Torres-Hernandez v. INS, 812 F.2d 1262 (9th Cir.1987); see also Sarno, supra note 4, § 4[a]-[c] at 25-36; 3 Gordon & Mailman, id., § 74.02[b][v]; 2 Yrtreberg, id., § 16:69-70 (7 years begins running after permanent residency established). For an overview of the discretionary factors to be considered or reconsidered on remand, see 2 Ytreberg, id., § 16.64-68
 
 
 [11]
 More than ten years separated the initiation of deportation proceedings and the second IJ's hearing. The delay may account for the failure to review all claims
 
 
 [12]
 The IJ began:
 Q: Mr. Matenog [counsel for petitioner] are you familiar with the fact that there was a 485 application [necessary for suspension of deportation] filed also:
 A: Yes, I didn't get a copy of it but I know it was filed.
 Q: Well, it seems to me Mr Matenog it's probably superfluous if he's a lawful resident at the present time?
 A: Yes.
 Q: Does he still have his green card?
 A: Yes, he does.
 Q: So he's still a lawful resident.
 A: Yes.
 Q: So the only question here is whether he should have deportation waived or not, so I'm going to return the I-485 to you at this point.
 AR at 50.